**UNITED DISTRIBUTING OF TEXAS, INC., Appellant,**

v.

**IRVING BANK AND TRUST COMPANY, Appellee.**

No. 5688.

Court of Civil Appeals of Texas, Waco.

Aug. 4, 1977.

Rehearing Denied Aug. 25, 1977.

Matthew M. Julius, Whitehurst & Guest, Dallas, for appellant.

C. R. Tabor, Tabor & Cline, O. Glenn Weaver, Irving, for appellee.

HALL, Justice.

United Distributing of Texas, Inc. (plaintiff) brought this suit against Irving Bank And Trust Company (defendant) asserting that defendant converted plaintiff's funds by accepting and negotiating certain checks issued by Heritage Building Company which named plaintiff and Four Seasons Air Conditioning Company as joint payees, but which were endorsed only by Four Seasons. Plaintiff prayed for the face amounts of the checks. After a hearing without a

jury, a take-nothing judgment was rendered against plaintiff. It appeals. We affirm.

The record shows that in 1967, 1968, 1969, and 1970, plaintiff sold air conditioning equipment to Herschel Vickers d/b/a Four Seasons Air Conditioning Company on a credit account. Vickers installed this equipment in apartment projects and houses under construction by nine builders. One of the builders was Heritage Building Company. Vickers maintained his only bank checking account with defendant in the name of Four Seasons. From time to time Vickers deposited funds received by him from Heritage and the other builders, and borrowed funds, into the checking account. In April, 1968, Vickers executed a written assignment to plaintiff of all proceeds he would be due from Heritage for air conditioning equipment installed by him in Heritage projects. A copy of the assignment was delivered to Heritage, and with Vickers's expressed consent Heritage agreed to pay all proceeds due to Vickers by checks listing both plaintiff and Four Seasons as joint payees. The eleven checks which are the subject of this litigation were issued by Heritage in compliance with the agreement and were payable jointly to plaintiff and Four Seasons. These checks represented weekly "draws" by Vickers as he completed work on the Heritage project, and included payment to him for labor as well as for all equipment installed which included materials such as metal ducts sold to him by suppliers other than plaintiff. The first was issued on November 6, 1968, and the last was issued February 5, 1969. They totaled $28,658.10. Without knowledge of the assignment and without plaintiff's consent, defendant accepted these checks as they were issued and credited them to the checking account of Four Seasons even though they were endorsed only by Four Seasons. The checks were paid by the drawee bank. In 1970 or later (the record is uncertain) Vickers was adjudged a bankrupt, and plaintiff has lost approximately $30,000.00 on his account.

Plaintiff's case was defended on the theory that plaintiff had been paid its interest in the checks, and accordingly suffered no damages as a result of the conversion sued upon. Findings of fact and conclusions of law were not requested by the parties nor filed by the court. Plaintiff contends the evidence is insufficient to support the implied finding that it has been paid the proceeds of the checks.

The assignment upon which the checks in question were issued by Heritage was a collateral assignment only on the specific air conditioning equipment sold to Vickers by plaintiff and used by Vickers on Heritage jobs, and was executed to secure plaintiff in the payment of only that equipment. It was not a general assignment. Vickers testified that the last charge against him by plaintiff for equipment placed on Heritage projects was on December 16, 1969, in the amount of $1,722.97. He also testified directly that plaintiff had been paid in full for all equipment placed on the Heritage jobs. Plaintiff admitted that all payments to it by Vickers were credited on a first in, first out, accounting basis to offset the oldest outstanding balance. All payments by Vickers were made from his Four Seasons's checking account with defendant. The last of the eleven checks in question was issued by Heritage on February 10, 1969. On that date Vickers owed plaintiff $25,202.44. Since that time he has paid plaintiff approximately $52,000.00 on his account. Plaintiff's records of the account show a "zero" balance on November 7, 1969, and thus support the inference that all invoices charged to the account prior to that time had been paid, and that the eventual loss suffered by plaintiff on the account resulted from charges to Vickers after that date and was not based upon the transactions in question.

■ Specifically, plaintiff contends that the proof of payment by Vickers was not admissible and that, in any event, it does not sufficiently trace the proceeds of the checks to plaintiff. We overrule these contentions. Plaintiff did not seek nominal damages on the trial and does not complain in that regard on this appeal. Defendant

was entitled to show that plaintiff had received the proceeds due it under the checks sued upon and that plaintiff did not suffer actual damages as a result of defendant's conversion. *DoAll Dallas Company v. Trinity National Bank of Dallas*, 498 S.W.2d 396, 404 (Tex.Civ.App.—Texarkana 1973, writ ref'd n. r.e.). The evidence we have recited is legally sufficient to support implied findings of those facts. The findings support the judgment.

Plaintiff's remaining complaints relate to rulings on its exceptions to defendant's pleadings. Some are rendered immaterial by our holdings, above. The others are without merit and are overruled.

The judgment is affirmed.